# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

In re:

DAVID H. MASON and
MARCIA G. MASON,

        **Debtors.**

**Bankruptcy Case No.
No. 03-41192**

_____

R. SAM HOPKINS, Trustee,

        **Plaintiff,**

**vs.**

JENNY CUMMINS AND
RUSSELL CUMMINS, and
JOHN DOES 1-4,

        **Defendants.**

**Adv. Proceeding Case
No. 05-8054**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    Monte Gray, SERVICE, SPINNER & GRAY, Pocatello, Idaho,
Attorney for Plaintiff.

    Karl R. Decker, HOLDEN, KIDWELL, HAHN & CRAPO, Idaho
Falls, Idaho, Attorney for Defendants.

MEMORANDUM OF DECISION - 1

In this action, Plaintiff R. Sam Hopkins, Chapter 7 trustee, seeks to avoid Defendants Jenny and Russell Cummins' ownership interest in a 1998 Malibu Sportster boat. But for a clerical error made as to the boat's identification number when the boat was sold years ago, there would be no dispute as to the validity of Defendants' rights in the boat. Unfortunately, though, the error was a critical one. After considering the written and oral arguments submitted by the parties concerning Defendants' motion for summary judgment, Docket No. 15, it appears Plaintiff's challenge to Defendants' interest has merit. What follows constitutes the Court's findings of fact and conclusions of law, and disposition of the issues raised by Defendants' motion. Fed. R. Bank. P. 7052.[1]

## Facts

From the Court's review of the records, the following facts appear to be undisputed.[2]

---

[1]  Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as promulgated and enacted prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005).

[2]  In his Objection to Motion for Summary Judgment, Docket No. 16, Plaintiff contests some of what Defendants represent are undisputed facts. However, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Bankr. P. 7056(e). By failing to submit an affidavit or other admissible evidence to dispute the

MEMORANDUM OF DECISION - 2

Debtors David and Marcia Mason filed for Chapter 7 relief on June 16, 2003. Plaintiff was appointed trustee. In that role, Plaintiff requested and received the results of a motor vehicle title records search from the Idaho Transportation Department (the "State"). Based upon what he learned from this report, Plaintiff commenced this action against Defendants on June 16, 2005. Compl., Ex. A, Docket No. 1.

The records search revealed that under a title certificate issued on May 26, 2000, Debtors were listed as the owners of a 1998 Malibu Sportster boat ("the Boat") bearing Vehicle Identification Number ("VIN")[3] MB2E7707F798. Compl., Ex. A, Docket No. 1. No lienholder was noted on the Boat's title certificate. *Id.* Defendants have possession of, and claim to own, a boat bearing this VIN. This is a contest between the parties over the Boat.

Debtors originally purchased the Boat on March 29, 2000. Aff. of Robert Harris, Ex. 1 at 3, Docket No. 15. Debtors applied to the State and obtained a certificate of title for the Boat on April 24, 2000. This title noted that Debtors' lender, Westmark Credit Union, held a lien on the Boat. *Id.*

---

facts offered by Defendants, Plaintiff has failed to create a genuine issue of fact. Consequently, the Court accepts as fact the information contained in the Affidavit of Robert Harris, Docket No. 15.

[3] While the Court for convenience refers to this number as the "VIN," strictly speaking, this is the boat's "Hull Identification Number."

MEMORANDUM OF DECISION - 3

Debtors promptly traded-in the Boat to a dealer, Precision Boats, Inc., on May 9, 2000.  They received a significant credit from Precision toward the purchase of another boat.  Aff. of Robert Harris, Ex. 1 at 2; Ex. 4 at 9, Docket No. 15.  Two critical mistakes were made in connection with this transaction.

First, on the Sales Invoice completed by Precision documenting the trade-in, the VIN for the Boat is listed as MB<u>Z</u>E7707F798, instead of the correct VIN, MB<u>2</u>E770F798.  Second, Debtors failed to deliver the Boat's title certificate to Precision as part of this transaction.[4]  Aff. of Robert Harris, Ex. 4 at 10, Ex. 2 at 4, Docket No. 15.  Instead, at that time, Mr. Mason signed an Indemnifying Affidavit on behalf of Precision wherein he represented that the Boat "has not been previously titled . . . ."  Aff. of Robert Harris, Ex. 1 at 6, Docket No. 15.  After Debtors traded-in the Boat, Precision apparently paid off the Westmark lien.  The State indicated such by removing Westmark as the lien holder and issuing a new title certificate in Debtors' name on May 26, 2000, this time showing no liens.  Aff. of Robert Harris, Ex. 1 at 2, Docket No. 15.  It is this May 26, 2000 certificate of title at issue before the Court.

---

[4] This was a very serious omission.  In Idaho, it is a felony to "[p]urport to sell or transfer a vehicle without delivering to the purchaser or transferee a certificate of title . . . duly assigned to the purchaser."  Idaho Code § 49-518(6).

MEMORANDUM OF DECISION - 4

Precision held the Boat in its inventory for a time, and then sold it to

Marc Ward and Terry Schuebert on April 4, 2001.  Aff. of Robert Harris, Ex. 2 at

3, Docket No. 15.  In connection with this transaction, the buyers and Precision

applied to the State for issuance of a certificate of title to the Boat, once again

utilizing the incorrect VIN MBZE7707F798 on the title application.  Aff. of

Robert Harris, Ex. 2 at 3, Docket No. 15.  Since no existing title was surrendered,

the State required that an Indemnifying Affidavit be submitted to process the title

application.   Josh Cutter, Precision's employee, executed the Affidavit and again

incorrectly indicated, "this vessel has not been previously titled."  Aff. of Robert

Harris, Ex. 2 at 4, Docket No. 15.  The Affidavit also perpetuated the error in the

VIN.  On May 11, 2001, the State issued a new certificate of title containing the

incorrect VIN for the Boat, showing Ward and Schuebert as the owners.

Approximately four years later (and almost two years after Debtors

had filed their bankruptcy petition), on April 14, 2005, Ward and Schuebert sold

the Boat to Defendants for $11,500.  At that time, they endorsed their certificate of

title and gave it to Defendants.  Aff. of Robert Harris, Ex. 2 at 4–6, Docket No. 15.

 Defendants promptly sent the title, along with a Report of Sale and Application

for Certificate of Title, to the State.  Aff. of Robert Harris, Ex. 3 at 3, Docket No.

15.  In this handwritten title application, the VIN is difficult to decipher, and it is

MEMORANDUM OF DECISION - 5

unclear from the record whether Defendants were attempting to correct the VIN to
change the incorrect "Z" to a "2."  Aff. of Robert Harris, Ex. 3 at 3, Docket No.
15.  Regardless of Defendants' intent it is undisputed that when the State issued
the new certificate of title showing Defendants as owners, that certificate again
contained the incorrect VIN MBZE7707F798.  Aff. of Robert Harris, Ex. 4 at 4,
Docket No. 15.[5]

       Plaintiff commenced this adversary proceeding against Defendants
on June 16, 2005 to avoid their ownership interest and to recover the Boat from
Defendants for the benefit of the bankruptcy estate.  In July 2005, after receiving
communications from the parties concerning the history of the title to the Boat, the
State took steps to "correct" its records.   On July 12, 2005, the State relegated "to
history" any electronic record showing Debtors as owners of the Boat with VIN
MB2E7707F798.  Instead, it changed the records to show that the Boat is titled in
Defendants' name, subject to a lien in favor of their lender, East Idaho Credit
Union.[6]  Aff. of Robert Harris, Ex. 4 at 1–2, Docket No. 15.   According to the

---

    [5]  Since the title certificate surrendered with this application bore the wrong VIN,
the Court speculates that the State resolved any issue with the legibility of the VIN in the
application by reference to the certificate in processing this application and issued yet
another title bearing an incorrect VIN.

    [6]  For reasons unknown to the Court, this lender, which apparently claims an
outstanding lien on the boat, was not made a party by Plaintiff to this adversary
proceeding.  As a result, the validity of its interest in the Boat has not been adjudicated.

MEMORANDUM OF DECISION - 6

State, there is no current owner for any vessel bearing VIN MBZE7707F798.  Aff.

of Robert Harris, Ex. 5, Docket No. 15.

Based upon these facts, Plaintiff argues that Defendants failed to

properly perfect their ownership interest in the Boat under Idaho law by obtaining

a valid title certificate.  He contends that the May 26, 2000 certificate of title

showing Debtors as owners of the Boat (which, recall, contains a correct VIN)

gives Plaintiff paramount rights to the Boat.  Plaintiff argues that any acts

concerning the title certificate occurring after Debtors' bankruptcy filing are

ineffective to establish Defendants' interest in the Boat, having occurred in

violation of the automatic stay.  As a result, Plaintiff contends that, using his

powers as a bankruptcy trustee, Defendants' interest in the boat is subject to

avoidance, and he should be allowed to recover and sell the Boat for the benefit of

the creditors of the bankruptcy estate.

Defendants argue that the incorrect VIN on the title certificate

originally issued to them by the State was simply a clerical error and has no

bearing on Defendants' ownership interest in the Boat.  In the alternative,

Defendants argue that their interest is not subject to avoidance since they and their

predecessors are good faith purchasers.

MEMORANDUM OF DECISION - 7

Defendants moved for summary judgment, Docket No. 15, and at the conclusion of the March 1, 2006 hearing, the Court took the issues raised by the motion under advisement. After due deliberation, the Court concludes Plaintiff is entitled to entry of a summary judgment, not Defendants.

### Conclusions of Law

### 1.    Summary Judgment.

Summary judgment is mandated if, when viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c), made applicable in bankruptcy proceedings by Fed. R. Bank. P. 7056; *Esposito v. Noyes* (*In re Lake Country Investments, LLC*), 255 B.R. 588, 596–97 (Bank. D. Idaho 2000); *see also Elsaesser v. Central Pre-Mix Concrete Co.* (*In re Pioneer Constr., Inc.*), 01.2 I.B.C.R. 66, 66 (Bank. D. Idaho 2001). The initial burden is on the moving party to show no genuine issue of material fact exists, and a failure to do so with respect to any required element of the cause of action is fatal to the motion. *Esposito*, 255 B.R. at 597. "If the nonmoving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment." *Id.* (internal citations omitted). Finally, the court

MEMORANDUM OF DECISION - 8

does not weigh the evidence presented; its role is to simply decide if a material

factual dispute exists.  *Id.*

  As noted, only Defendants have filed a motion for summary

judgment.  Docket No. 15.  However, in the conclusion to Plaintiff's Objection to

Motion for Summary Judgment, Docket No. 16, Plaintiff asks that he be awarded

a summary judgment "on all counts requested in his complaint."  Obj. to Mot. at 8.

Plaintiffs did not object to this request in their Reply Memorandum in Support of

Motion for Summary Judgment, Docket No. 18.

  It is appropriate for the Court to grant summary judgment to the non-

moving party when it is  "apparent from the record and at the hearing that there is

no genuine issue of material fact, that the moving party has had a full opportunity

to ventilate the issue, and the non-movant is entitled to judgment as a matter of

law."  *Stoll v. Runyon*, 165 F.3d 1238, 1243 n. 1 (9th Cir. 1999) (citing *Superior*

*Eng'g and Elecs. Co., Inc. v. Sanders*, 833 F.2d 823, 825 (9th Cir. 1987); *Cool*

*Fuel, Inc. v. Connett*, 685 F.2d 309 (9th Cir. 1982)).  The Court concludes this is

such a situation.  As noted, Defendants did not object to Plaintiff's informal

request for summary judgment.  In addition, the issues have all been carefully

briefed and argued by the parties.  Little would be accomplished by requiring

Plaintiff to file a formal motion, and Defendants suffer no prejudice by waiving

MEMORANDUM OF DECISION - 9

that requirement.  There are no genuine issues of material fact and Defendants, as

the moving party, have had "a full opportunity to ventilate the issue[s]."  *Stoll*, 165

F.3d at 1243 n.1.

### 2.  Plaintiff may Avoid Defendants' Interest in the Boat.

Plaintiff, as trustee, asserts his rights to the Boat are superior to those

of Defendants under the strong-arm provision of § 544.  The applicable portion of

that statute provides that:

> (a) The trustee shall have, as of the commencement of
> the case, and without regard to any knowledge of the
> trustee or of any creditor, the rights and powers of, or
> may avoid any transfer of property of the debtor or any
> obligation incurred by the debtor that is voidable by--
>
> (1) a creditor that extends credit to the debtor at the
> time of the commencement of the case, and that
> obtains, at such time and with respect to such credit, a
> judicial lien on all property on which a creditor on a
> simple contract could have obtained such a judicial
> lien, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1).  Under this provision, "the Code grants the trustee 'the

status of a creditor with a judicial lien on all property on which a creditor could

have obtained a judicial lien, whether or not such a creditor actually exists. . . .

The rights of the trustee as the hypothetical judicial lien creditor are determined by

state law."  *Hopkins v. Gutknecht* (*In re Lewis*), 04.3 I.B.C.R. 133, 135 (Bankr. D.

MEMORANDUM OF DECISION - 10

Idaho 2004) (quoting 5 *Collier on Bankruptcy* ¶ 544.05 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev. 2004)).

Under Idaho's Vessel Titling Act, Idaho Code §§ 67-7039–7041, the State issues title certificates for boats in the same manner as for motor vehicles. *See also* Idaho Code § 49-501A. The Act requires vessels with a model year of 2000 and newer to be titled; for models older than 2000, the titling requirements are optional. Idaho Code § 62-7040(1). Here, the boat is a 1998 model, and so state law did not require that a title certificate be issued for the Boat. However, once a certificate of title is issued, the vessel is deemed "titled" and it is thereafter subject to all of the Act's requirements. Idaho Code § 67-7040(3). It is undisputed Debtors obtained a certificate of title to the Boat (likely so that Westmark's lien could be noted). As a result, the Act's provisions control here.

Under the Act, "all titling procedures for vessels shall be governed by title 49, Idaho Code. Unless otherwise provided, the term 'vessel' shall be interchangeable with the term 'vehicle' throughout title 49, Idaho Code." Idaho Code § 67-7039(3). The Court therefore looks to title 49 of the Idaho Code to determine the validity of the certificates of title and the rights of the parties at issue in this case.

The Idaho statutes instruct that:

MEMORANDUM OF DECISION - 11

> No person shall sell or otherwise dispose of a vehicle
> without delivery to the purchaser or transferee a
> certificate of title with an assignment as necessary to
> show title in the purchaser, nor purchase or otherwise
> acquire or bring into the state a vehicle except for
> temporary use . . . unless he shall obtain a certificate of
> title in his name in accordance with the provisions of
> this chapter.  Any dealer holding current Idaho dealer
> license plates may, in lieu of having a certificate of
> title issued in his name, reassign any existing
> certificate of title issued in this state.

Idaho Code § 49-502.

> Additionally:

> no person acquiring a vehicle from the owner, whether
> the owner is a dealer or otherwise, shall acquire any
> right, title, claim or interest in or to the vehicle until he
> has issued to him a certificate of title to that vehicle,
> nor shall any waiver or estoppel operate in favor of
> that person against a person having possession of a
> certificate of title or an assignment of the certificate of
> the vehicle for a valuable consideration.

Idaho Code § 49-503.[7]

> This Court has previously observed that Idaho's motor vehicle titling

law "expresses a legislative policy that a motor vehicle may be owned by only one

---

[7]  The latter provision is very familiar to Idaho bankruptcy trustees and to this
Court.  Trustees have aggressively enforced its terms, and they have frequently asserted
claims to vehicles in bankruptcy cases as against others.  *See, e.g., Hopkins v. Shradley*
(*In re Shradley*), 03.1 I.B.C.R. 7 (Bankr. D. Idaho 2003); *In re Friel*, 90 I.B.C.R. 212,
(Bankr. D. Idaho 1990); *Trustee Servs. Corp. v. Smith* (*In re Kellner*), 85 I.B.C.R. 77
(Bankr. D. Idaho 1985)

MEMORANDUM OF DECISION - 12

person at any one time–the party whose name appears on the official certificate issued by the State." *Hopkins v. Shradley* (*In re Shradley*), 03.1 I.B.C.R. 7, 8 (Bankr. D. Idaho 2003). Moreover, the "Idaho courts, as well as this Court, [have] applied the requirements of this statute strictly in the past." *Id.* (citing *In re Friel*, 90 I.B.C.R. 212, 214 (Bankr. D. Idaho 1990)). In one instance, the Court noted,

> [T]he burden of securing a certificate of title to protect
> a beneficial interest in a vehicle is on the buyer . . .
> [and] under Idaho's Motor Vehicle Act, any expansion
> of the concept of ownership beyond that reflected on
> the certificate of title should be limited to situations
> involving civil liability and insurance.

*Shradley*, 03.1 I.B.C.R. at 8–9 (citing *Northland Ins. Co. v. Boise's Best Autos & Repairs*, 970 P.2d 21, 26 (Idaho Ct. App. 1997), *rev'd in part on other grounds*, 958 P.2d 589 (Idaho 1998)). In short, the state courts, as well as this Court, have stood firm in enforcing the statute's edict that in order to perfect an ownership interest in a vehicle (or titled boat), that owner's name must properly appear on the title certificate.

On a related issue, the Idaho courts have indicated that the "principle is well settled that a seller of personal property can convey no greater title than he had, and it makes no difference that the purchaser has no notice and is ignorant of the existence of other parties in interest." *Federal Land Bank of Spokane v. McCloud*, 20 P.2d 201, 204 (Idaho 1933) (citing *Klundt v. Bachtold*, 188 P. 924,

MEMORANDUM OF DECISION - 13

927 (Wash. 1920)); *see also C.R. Brunette v. Idaho Veneer Co.*, 384 P.2d 233, 235 (Idaho 1963).  It must therefore follow that unless the seller of a titled vehicle has a valid claim to ownership, the buyer's title will be deficient.

With the legislative policy so clearly expressed, and the wealth of decisional law, it is no great challenge to apply these simple legal rules to the facts in this action.  Simply put, there is no dispute that in May 2000, the State issued, and Debtors received, a valid certificate of title identifying them as owners of the Boat containing the correct VIN.   It is also undisputed that all subsequent title certificates issued by the State as a result of transfers of ownership of the Boat contained an erroneous VIN.  In the words of Idaho Code § 49-503, then, Debtors were the only parties to obtain a certificate of title to "that vehicle (*i.e.,* the Boat) . . . ."

Obviously, Debtors sold the Boat.  But as part of that transaction, it was incumbent upon Precision, as the buyer, to perfect its ownership interest in the Boat under Idaho law.  Unfortunately, Precision never obtained a valid ownership interest in the Boat because it failed to secure Debtors' endorsement and possession of the existing title certificate to the Boat as a part of the sale transaction.  As a dealer, while Precision need not secure a new certificate issued in its name as owner, Precision was duty-bound to obtain the existing certificate from Debtors.  Put plainly, it was illegal for Precision to resell a titled boat without

MEMORANDUM OF DECISION - 14

assigning and delivering an existing title certificate to the purchasers. Idaho Code
§ 49-502. Regrettably, when Precision sold the boat to Ward and Schuebert,
because it failed to obtain the original title certificate from Debtors, it had no valid
ownership interest to convey to the new purchasers. *See Federal Land Bank of
Spokane*, 20 P.2d at 204.

Ward and Schuebert never obtained a valid ownership interest in the
Boat. While a certificate of title was issued to them as a result of the Precision
deal, that certificate did not correctly identify the Boat. In the words of the statute,
it was not the "certificate of title to <u>that</u> vehicle" as required by Idaho Code § 49-
503 (emphasis added). Ward and Schuebert were, in turn, unable to convey valid
title to Defendants for the same reason. *See Shradley*, 03.1 I.B.C.R. at 8–9.

As a bankruptcy trustee exercising his strong-arm powers under
§ 544(a), Plaintiff may avoid, as of the date of filing the petition, any transfer of
any interest in property of Debtors that could be avoided by a hypothetical
judgment lien creditor. Since the new title certificate bore an incorrect VIN, and
indeed did not refer to the Boat, and because there was another existing valid title
certificate showing Debtors owned the Boat, Plaintiff may avoid the various
transfers of ownership of the Boat. Given the confluence of state and federal
bankruptcy law, Plaintiff's rights in the Boat are superior to those of Defendants.
This may seem an inequitable and harsh result. It is not.

MEMORANDUM OF DECISION - 15

First, the Idaho legislature has statutorily defined the equities by adopting a comprehensive system of registering ownership interests in titled vehicles and boats.  That system, when its terms are properly observed, provides protection to anyone interested in owning a vehicle or boat in this State.  In that sense, it would be inappropriate for this Court to make judicial exceptions to the operation of this thoughtful scheme.  Indeed, the statutes make clear that parties should not be able to assert either waiver or estoppel to defeat its terms.  Idaho Code § 49-503.  This is a clear indication that the purported equities of a case must bow to the policy of the Legislature.  Congress, through granting a trustee state law rights, has simply incorporated that philosophy in bankruptcy cases.

And second, as is more fully discussed below, any misfortune befalling Defendants was a consequence, at least in part, of the lack of diligence by them and their predecessors in interest in ensuring that the title applications and title certificates concerning the Boat matched the correct VIN on the Boat itself.  Where two private parties each claim to own an interest in the same titled vehicle, Idaho resolves that dispute solely by reference to the title certificate.

### 3.  Plaintiff is Entitled to Recover the Boat.

Having avoided an interest in property under § 544(a), the Code prescribes the circumstances under which a trustee may then recover the transferred property for administration in the bankruptcy estate:

MEMORANDUM OF DECISION - 16

> (a)  Except as otherwise provided in this section, to the
> extent that a transfer is avoided under section 544 . . .
> of this title, the trustee may recover, for the benefit of
> the estate, the property transferred, or, if the court so
> orders, the value of such property, from —
> (1) the initial transferee of such transfer or the entity
> for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial
> transferee.

11 U.S.C. § 550(a).  Defendants in this case are "mediate transferees" of the Boat

(and Precision was the "initial transferee" from Debtors) for purposes of this Code

provision.  Therefore, Plaintiff may recover the Boat from Defendants under

§ 550(a)(2).

However, Defendants argue they are protected by an exception to

this general rule which specifies that a trustee "may not recover under section

(a)(2) of this section from . . . [(1)] a transferee that takes for value, including

satisfaction or securing of a present or antecedent debt, in good faith, and without

knowledge of the voidability of the transfer avoided [or (2) from] any . . . mediate

good faith transferee of such transferee."  11 U.S.C. § 550(b)(1) and (2).

Under § 550(a), a trustee's right to recover from the initial transferee

of the debtor is absolute.  *Abele v. Modern Fin. Plans Servs.* (*In re Cohen*), 300

F.3d 1097, 1102 (9th Cir. 2002) (quoting *Schafer v. Las Vegas Hilton Corp.* (*In re

Video Depot*), 127 F.3d 1195, 1197–98 (9th Cir. 1997)).  However, § 550(b)

provides a safe harbor for good faith *subsequent* transferees.  *Abele*, 300 F.3d at

MEMORANDUM OF DECISION - 17

1102.  Subsequent transferees may therefore benefit from a defense under the statute unavailable to initial transferees.  *Schafer*, 127 F.3d at 1198.

To take advantage of this safe harbor, Defendants must show they received the Boat from a transferee who obtained it for value, acting in good faith and without knowledge of the voidability of the transfer.  11 U.S.C. § 550(b)(2).  "[A] party has knowledge that a transfer is avoidable [either] if the transferee knows the transfer is the result of actual fraud, or *knows facts that would lead a reasonable person to inquire further as to the avoidability of the transfer*."  *Hopkins v. D. L. Evans Bank* (*In re Fox Bean Co., Inc.*), 02.4 I.B.C.R. 185, 190 (Bankr. D. Idaho 2002) (emphasis added) *aff'd*, CV03-99-E-BLW (D. Idaho Mar. 19, 2004) *and aff'd,* 144 Fed.Appx. 697 (9th Cir. Sept. 29, 2005).  As one court has explained,

> No one supposes that "knowledge of voidability" means a complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do.  Some facts strongly suggest the presence of others; a recipient that closes its eyes to the remaining facts may not deny knowledge.

*Kendall v. Sorani (In re Richmond Produce Co., Inc.),* 195 B.R. 455, 464 (N.D.Cal. 1996) (quoting *Bonded Fin. Serv., Inc. v. European American Bank*, 838 F.2d 890, 897-898 (7th Cir. 1988)).  The transferee bears the burden of proof

MEMORANDUM OF DECISION - 18

to establish a § 550(b) defense.  *In re Richmond Produce*, 195 B.R. at 464 (citing

*Internal Revenue Service v. Nordic Village, Inc.*, 915 F2d, 1049, 1055 (6th

Cir. 1990), *rev'd on other grounds,* 503 U.S. 30 (1992)).

Precision, Debtors' immediate transferee, acquired the boat for

"value" as required by § 550(b)(1).  However, on this record, Precision simply

cannot qualify as a good faith transferee without knowledge of the voidability of

the transfer of title to the Boat because an outstanding title certificate existed.  As

a result, Defendants cannot take advantage of the § 550(b)(2) avoidance exception

as a mediate transferee "of such transferee (i.e., Precision)."

While there are no allegations that any of the transferees engaged in

fraud, the absence of affirmative misconduct does not necessarily equate with

good faith.  It is plain that Precision, and for that matter, all the subsequent

transferees including Defendants, had actual knowledge of the correct VIN

displayed on the Boat.  As can be seen in photos submitted by the parties, the VIN

on the Boat appears in large letters and numbers imprinted on the hull.  *See* Aff. of

Robert Harris, Exs. 7–8, Docket No. 15.  In other words, any party having

possession of the Boat necessarily has knowledge of the correct VIN.  To the

Court, the transferees' knowledge of the true VIN is critical in this context.  Armed

with this knowledge of the true VIN, Precision and the others could have easily

discovered two important facts about these transactions.

MEMORANDUM OF DECISION - 19

First, by checking with the State, Precision could have quickly determined that there was an outstanding title certificate for the Boat at the time it acquired it from Debtors. Had Precision done so, it would have quickly discovered that Debtors' representation that no title certificate existed was incorrect. In Idaho, the records of the Idaho Transportation Department are open to the public. The system established for the issuance and transfer of certificates of title to vehicles and boats is intended to provide a convenient and reliable means to correctly determine the ownership and lien status of titled vehicles, and when used properly, operates to prevent the existence of secret or undisclosed interests. However, to be effective, this system requires that correct information be submitted by parties to document their transactions. Precision, as a boat dealer, presumably was aware of the importance of determining whether a title certificate existed for the Boat, and was familiar with the process of making an inquiry with the State.

Second, the parties' actual knowledge of the correct VIN should have alerted the transferees that the title certificates issued to Ward/Schuebert and Defendants were defective. Again, as purchasers, it was their duty to obtain a proper title certificate. Had they compared the numbers on the titles to the actual VIN appearing on the Boat, they could have contacted the State and been alerted

MEMORANDUM OF DECISION - 20

that a title certificate showing Debtors as owners existed.[8]  On this record,

Defendants cannot show they or Precision were good faith transferees, or lacked

knowledge that Debtors' transfer of the Boat was potentially voidable.  Defendants

are therefore not entitled to the protections of § 550(b).

In sum, Precision never acquired an enforceable ownership interest

in Debtors' Boat.  Because the Boat was titled, the statute required Precision to

obtain the title certificate when it purchased the Boat from Debtors.  Because its

title was defective, Precision could not convey good title to its purchasers, Ward

and Schuebert, nor could those parties in turn transfer good title to Defendants.

Without a correct VIN on the title certificate, none of the parties acquired an

enforceable ownership interest in the Boat.

Debtors' purported transfer of ownership to Precision is therefore

avoidable by Plaintiff under § 544(a).  Under § 550(a)(2), Plaintiff may recover the

boat from Defendants.  Given these facts, with the correct facts a matter of public

record and in plain view on the Boat itself, neither Precision nor Defendants

---

[8]  Defendants argue that the State failed in its responsibility to verify the Boat's
VIN prior to reissuing the title under these facts.  This argument has some appeal, but not
in this contest with a bankruptcy trustee.  Defendants' potential claim against the State
(or against other parties, for that matter) are not properly before this Court.  Moreover, to
prevail in their claim, the Court presumes Defendants and their predecessor owners
would have to somehow satisfactorily explain why they all submitted incorrect
information about the Boat's VIN to the State with each subsequent title certificate
application.

MEMORANDUM OF DECISION - 21

acquired their interests in the Boat in good faith as required by the safe harbor

provisions of § 550(b).

**4.  The Post-Bankruptcy Changes to the Title Certificate are Ineffective.**

Upon learning of the Boat's tortured title history from the parties, the

State attempted to administratively transfer title to the Boat into Defendants' name.

While the Court presumes the State was motivated by a desire to ensure that a

"correct" record of title existed for this Boat, its actions cannot defeat Plaintiff's

rights as a bankruptcy trustee.

Recall, Plaintiff's right to avoid Defendants' interests in the Boat

under § 544(a)(1) are measured "as of the commencement of the [bankruptcy]

case . . . ."  The State's post petition efforts to change the public records have no

impact on the outcome of the issues under these facts.  Upon the filing of the

Petition on June 16, 2003, the State's record undisputably showed that Debtors,

not some other party, were the owners of this particular boat.  Under Idaho Code §

49-503, as implemented by § 544(a)(1) of the Bankruptcy Code, Defendants'

claims of ownership to this Boat are unenforceable.[9]

---

[9] Plaintiff argues that the State's post-petition actions to "correct" the title to the Boat violated the § 362(a) automatic stay.  Arguably, what occurred may have constituted an "administrative, or other action or proceeding against the debtor" for purposes of
§ 362(a)(1), or perhaps an "act . . . to exercise control over property of the estate" for purposes of § 362(a)(3).  If so, as acts taken in violation of the automatic stay, they are

MEMORANDUM OF DECISION - 22

**Conclusion**

The transfer of the Boat from Debtors to Precision is an avoidable

transfer under § 544(a) because Precision, as the purchaser, failed to perfect its

ownership interest by obtaining a title certificate as required by state law. Under

Idaho law, no one but the owner listed on the title certificate has an enforceable

interest in the Boat. Since Precision could not convey good title without delivery

of a proper title certificate, its transferees, and then Defendants, acquired a

defective title. As the buyers of the Boat, it was incumbent upon the transferees

and Defendants to comply with the Idaho statutes. They did not. On the date

Debtors filed for bankruptcy relief, their name appeared in the State's records as

the owners of the Boat. Under Idaho Code § 49-503, no one else may assert an

enforceable interest in the Boat. Given their actual knowledge of the Boat's

correct VIN, Defendants and their predecessors did not act in good faith. Finally,

the acts taken by the State to correct the title to this Boat after bankruptcy are

ineffective as against a trustee. Plaintiff, as trustee, is entitled to recover

possession of the Boat from Defendants.

---

void. *See Snavely v. Miller* (*In re Miller*), 397 F.3d 726, 729 (9th Cir. 2005) (citing
*Parker v. Bain*, 68 F.3d 1131, 1338 (9th Cir. 1995)). On the other hand, the State's acts
may have been undertaken to enforce its police or regulatory powers such that it was
excepted from the operation of the automatic stay by § 362(b)(4). The Court need not,
and does not, decide this issue.

MEMORANDUM OF DECISION - 23

The Court will grant summary judgment to Plaintiff.  A separate order and judgment will be entered.


Dated: April 11, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge


MEMORANDUM OF DECISION - 24